**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THEODORE McGARY,

*Plaintiff,*

v.

SHEILA CROWLEY, Acting Director of the Peace Corps,

*Defendant.*

Civil Action No. 13-1267 (RDM)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Theodore McGary prevailed against his former employer, the Peace Corps, in proceedings before the Equal Employment Opportunity Commission ("EEOC"). The EEOC determined that the Peace Corps's decision to fire McGary was motivated by unlawful retaliatory animus, and it awarded him relief including damages, attorney's fees, and back pay with interest. *See McGary v. Vasquez*, EEOC Appeal No. 0720060027, 2007 WL 788295, at *4, *6–7 (Mar. 7, 2007) [hereinafter *EEOC Merits Decision*]. McGary ultimately collected more than $450,000. *See McGary v. Williams*, EEOC Appeal No. 0120111792, 2012 WL 3878944, at *8 (Aug. 21, 2012); Dkt. 14-3 at 2.

Dissatisfied with that outcome, McGary brings this *pro se* civil action to relitigate his claims. *See McGary v. Hessler-Radelet* ("*McGary I*"), 156 F. Supp. 3d 28, 36 (D.D.C. 2016). The question is whether he filed his complaint too late. Under Title VII of the Civil Rights Act of 1964, a federal employee who has been "aggrieved by the [EEOC's] final disposition of his complaint" may press his claims in federal court—but only "[w]ithin 90 days of receipt of notice of [the EEOC's] final action." 42 U.S.C. § 2000e-16(c). Here, 102 days elapsed between the

EEOC's final decision on April 26, 2013, and McGary's filing of this lawsuit on August 6, 2013. *See McGary v. Williams*, EEOC Req. No. 0520130013, 2013 WL 1856740 (Apr. 26, 2013) [hereinafter *Final EEOC Decision*]; Dkt. 1 at 1. The Court therefore authorized limited discovery into whether McGary was in "receipt of notice" of the EEOC's decision as of the critical date of May 8, 2013. *See* Minute Order of Mar. 7, 2016.

The Peace Corps has now moved for summary judgment on the ground that McGary filed his lawsuit more than 90 days after his "receipt of notice." Dkt. 42. The record, however, does not reveal precisely when McGary actually received the notice. And it is undisputed that the EEOC mailed its final decision only to McGary's prior residence in Fredericksburg, Virginia—despite knowing that McGary had since moved to the U.S. naval base in Yokosuka, Japan, and despite the EEOC's prior practice of mailing notices to McGary's address in Japan. McGary posits that, given the logistics of forwarding his mail from Virginia to Japan, he would not have received the notice of final agency action before the relevant date.

As explained below, the Peace Corps has failed to shoulder its burden of demonstrating by uncontroverted evidence that McGary received notice before May 8, 2013. In the alternative, moreover, McGary has adduced sufficient facts to permit the reasonable conclusion that his 90-day deadline to sue should be equitably tolled in light of the EEOC's failure to send the notice to McGary's residence in Japan. The Court, accordingly, **DENIES** the Peace Corps's motion.

## I. BACKGROUND

McGary has been litigating this case against the Peace Corps for almost seventeen years. In August 2000, McGary, then a Peace Corps employee, invoked the agency's equal employment opportunity ("EEO") counseling process, arguing that the Peace Corps declined to grant him a wage increase because of his race. *See EEOC Merits Decision*, 2007 WL 788295, at *1–2. In

September 2000, the Peace Corps issued McGary a reprimand that ultimately led to his dismissal. *Id.* at *1. By November 2000, McGary had filed one or more formal EEO complaints re-asserting his earlier claim and further alleging that the reprimand was the product of both racial discrimination and unlawful retaliation for his EEO activity. *Id.* In September 2005, an EEOC administrative law judge rejected the discrimination claims but found that McGary was the victim of unlawful retaliation. *Id.* at *1–2. The EEOC affirmed that judgment in March 2007. *Id.* at *6–7. The parties then spent the next six years litigating the details of the remedy and the Peace Corps's compliance with the EEOC's order. *See generally Final EEOC Decision*, 2013 WL 1856740, at *2–3.

In May 2012—while the EEOC proceedings were ongoing—McGary relocated from Fredericksburg, Virginia, to the U.S. naval base in Yokosuka, Japan. Dkt. 42-2 at 12; Dkt. 46 at 26 (McGary Aff.). The record does not reflect whether McGary's contact information on file with the EEOC was ever officially updated (and, indeed, neither party has proffered a copy of the EEOC's docket or any other evidence of the EEOC's internal designation of McGary's address of record). But when the EEOC issued its next decision in McGary's case in August 2012, it mailed copies of that decision to McGary at both his Virginia address and his Japanese one. *Compare* Dkt. 42-2 at 14 (listing McGary's Japanese address) *with* Dkt. 13 at 51 (EEOC certificate of mailing to that address). McGary thereafter continued to correspond with the EEOC from Japan, *see* Dkt. 42-2 at 14, and the EEOC continued to send documents exclusively to McGary's Japanese address, *see* Dkt. 43 at 25–27.

On April 26, 2013, the EEOC issued its final decision in McGary's case. *See Final EEOC Decision*, 2013 WL 1856740. That decision contained the following paragraph:

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

> This decision of the Commission is final, and there is no f[u]rther right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.

*Id.* at *5 (bold and underlining in original). Neither party has submitted a copy of the certificate of mailing, which would have identified the date the decision was actually mailed and the address or addresses to which it was sent. *Cf.* Dkt. 13 at 51. And, significantly, the Peace Corps "ha[s] no personal direct knowledge" of whether or not the EEOC mailed its final decision to Japan. Dkt. 42-1 at 4. As a result, the only account of how the EEOC served its decision is McGary's own testimony.

According to McGary, the EEOC mailed its final decision to his house in Virginia, but not to his residence in Japan. Dkt. 46 at 26 (McGary Aff.). At the time, the Virginia house was vacant and uninhabitable due to water damage from flooding. Dkt. 42-2 at 12 (McGary Interr. Resp. No. 2(a)). McGary's estranged wife lived nearby, however, where she was undergoing treatment for cancer. *Id.* at 12–13 (McGary Interr. Resp. No. 2(b)). At some point, although McGary is unsure when, McGary's wife visited the Virginia house, found the EEOC's decision in the mail, and forwarded it to McGary in Japan. *Id.* McGary does not remember the exact date on which he received the forwarded copy, but he believes it arrived "sometime in May or June 2013." *Id.* at 13 (McGary Interr. Resp. No. 2(c)). He further attests that, "because the notice had to be processed through two postal systems, the U.S. Post Office in the U.S., and the U.S. Navy Postal system in Japan," the EEOC's final decision "would not have reached the U.S. Navy post office in Yokosuka earlier than May 9, 2013." Dkt. 46 at 26–27 (McGary Aff.).

On August 6, 2013, McGary filed the instant lawsuit. Dkt. 1 at 1. McGary's statutory deadline for filing was 90 days after his "receipt of notice" of the EEOC's final decision. *See* 42

U.S.C. § 2000e-16(c). Accordingly, if McGary was not "[in] receipt of notice" before May 8, 2013, McGary satisfied the deadline. But if he was "[in] receipt of notice" prior to May 8, 2013, his lawsuit is untimely under the terms of the statute.

The Peace Corps first raised its timeliness defense as one of many arguments in its earlier motion to dismiss. Dkt. 14-1 at 7. The Court denied that aspect of the motion, holding that "further factual development and briefing [was] necessary before [the Court] [could] determine whether [McGary's] claim is barred by the 90-day statute of limitations in 42 U.S.C. § 2000e-16(c)." *McGary I*, 156 F. Supp. 3d at 35. Following the Court's decision, the parties engaged in limited discovery on the issue, *see* Minute Order of Mar. 7, 2016, and the Peace Corps has now renewed its timeliness defense in the pending motion for summary judgment, Dkt. 42.

## II. LEGAL STANDARD

The moving party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if it can "show[] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court, moreover, must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

## III. ANALYSIS

Under Title VII, McGary was required to bring this lawsuit "[w]ithin 90 days of receipt of notice of final action taken by [the EEOC]." 42 U.S.C. § 2000e-16(c). This 90-day deadline

"is not a jurisdictional requirement but rather is similar to a statute of limitations." *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) (citation and internal quotation marks omitted). Like a statute of limitations, it constitutes "an affirmative defense," which the Peace Corps "bears the burden of pleading and proving." *Id.* at 165 (citation and internal quotation marks omitted). But, "[i]f the [Peace Corps] meets its burden, [McGary] then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

**A. Timeliness of the Complaint**

The parties devote little attention to the threshold question of statutory interpretation: Did delivery of the final EEOC decision to McGary's Virginia house (where his estranged spouse retrieved it and forwarded it to McGary in Japan) constitute "receipt of notice" sufficient to trigger the 90-day clock? The answer to that question is not obvious under Supreme Court or D.C. Circuit precedent. *See, e.g.*, *Christmas v. Spellings*, 404 F. Supp. 2d 239, 240 (D.D.C. 2005). Three decisions, however, shed light on how courts should go about applying the receipt-of-notice requirement.

In the first of those decisions, *Bell v. Brown*, 557 F.2d 849 (D.C. Cir. 1977), the D.C. Circuit read § 2000e-16(c)'s 90-day clock to start running only upon *actual notice* to the plaintiff of the final administrative decision. The court stated that the window for filing "plainly . . . begins to run only from the time the notice comes into the [employee's] hands," *id.* at 852, and construed the statute to conform to the *pro se* plaintiff's "prudent . . . belief that he had 30 days [now 90 days] from the time that he first saw the decision to bring his *pro se* endeavor in court,"

*id.* at 854.[1] The court further explained that, although the statutory text "is noncommittal as to whether receipt by a representative is equivalent for this purpose to receipt by the employee," the "remedial" nature of the statute and the then-governing Civil Service Commission regulations supported the conclusion that "the statutory period is not triggered by receipt of notice by the [employee's] representative on an earlier date."[2] *Id.* at 853–55. That portion of the decision, however, was arguably *dicta* because, as the D.C. Circuit noted, the lawyer who received the notice in *Bell* had represented the plaintiff in the administrative proceeding but no longer represented him at the time the notice was provided. *Id.* at 851–52, 854; *see also id*. at 857 n.70 (given broader holding, "we need not consider the alternative suggestion that, even if imputed notice is permitted, in this case there was no receipt by a then-authorized representative").

The Supreme Court walked back the farthest reaches of *Bell* in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990). *Irwin* held that an employee is constructively "[in] receipt of notice" for purposes of § 2000e-16(c) when the notice is received by his attorney. As the Court observed, "[u]nder our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be

---

[1] When *Bell* was decided, the text of 42 U.S.C. § 2000e-16(c) was identical to the present version except that (1) the statute referred to the "Civil Service Commission" instead of the EEOC and (2) the filing window lasted only 30 days instead of 90 days. *See* 42 U.S.C. § 2000e-16(c) (1976). The EEOC replaced the Civil Service Commission effective January 1979. *See* Reorganization Plan No. 1 of 1978, § 3, 43 Fed. Reg. 19,807, 92 Stat. 3781. Congress extended the filing window to 90 days in 1991. *See* Civil Rights Act of 1991, Pub. L. No. 102-166, § 114, 105 Stat. 1071, 1079.

[2] When *Bell* was decided, the Civil Service Commission regulations "required that both the complaining employee and his representative, if there were one, be sent copies of the administrative decision, together with notice of the right to institute a civil action." 557 F.2d at 854–55 & n.49 (citing 5 C.F.R. § 713.234 (1976)). The current regulations retain this general structure—requiring that "all official correspondence shall be with [a represented complainant's attorney] with copies to the complainant"—but adds the qualifier that "time frames for receipt of materials shall be computed from the time of receipt by the attorney." 29 C.F.R. § 1614.605(d).

charged upon the attorney.'" *Id.* at 92 (citation omitted). The Supreme Court also "reject[ed] Irwin's contention that there is a material difference between receipt by an attorney and receipt by that attorney's office for purposes of § 2000e-16(e)." *Id.* at 93. To hold otherwise, the Court wrote, would be at odds with the consistent practice of the federal courts in treating "notice to an attorney's office" as "notice to the client," and would "encourage factual disputes about when actual notice was received." *Id.* Beyond announcing these rules, however, the Supreme Court did not construe "receipt of notice" and did not address *Bell*'s holding that notice *to an individual* requires actual receipt—*i.e.*, that the § 2000e-16(e) clock does not "begin[] to run [until] the notice comes into the [employee's] hands." 557 F.2d at 852.

The final case of note is *Rao v. Baker*, 898 F.2d 191 (D.C. Cir. 1990), on which the Peace Corps principally relies. Unlike *Bell* and *Irwin*, *Rao* did not involve a statutory deadline or § 2000e-16(c). Instead, *Rao* concerned when an employee may appeal an agency's adverse EEO decision to the EEOC itself—an issue governed solely by regulation. *See* 898 F.2d at 193. *Compare* 42 U.S.C. § 2000e-16(c) (deadline for filing in district court) *with* 29 C.F.R. § 1614.402 (deadline for appealing to the EEOC). Given this distinction, *Rao* "d[id] not [present] the question whether *Bell* itself should be modified." 898 F.2d at 197.

In *Rao*, then-existing regulations required employees to bring EEOC appeals within "20 calendar days after receipt of the agency's notice of final decision." *Id.* at 193 n.3. The agency had mailed notice of its final decision to Rao at his last known address and to Rao's attorney. *Id.* at 192. Rao, however, had left the country some months prior without alerting the agency, and he never received the notice. *Id.* Instead, the notice was received by (1) Rao's friend, whom Rao had asked to check his mail, and (2) Rao's attorney. *Id.* The attorney ultimately filed Rao's

EEOC appeal, but did so "27 days after the attorney acknowledged receiving notice and 23 days after Rao's friend had signed for the notice." *Id.*

The D.C. Circuit held that Rao's complaint was untimely because he was on "constructive notice" of the agency's decision. *Id.* at 193. The court premised its decision not to extend *Bell*'s rule on four factors: (1) that *Bell* interpreted a statute whereas *Rao* construed a regulation; (2) that the EEOC's regulatory scheme had "substantially changed" since *Bell*; (3) that "unlike in *Bell*, Rao had an ongoing attorney-client relationship with his lawyer at the time the notice was mailed;" and (4) that Rao's friend also received the notice. *Id.*

Most importantly for present purposes, *Rao* declined to decide "whether receipted notice by Rao's friend would be sufficient in and of itself to constitute constructive notice to Rao." *Id.* at 197. Rather, the critical fact was that "Rao himself, not the agency, [had] designated the faulty mechanism which resulted in his nonreceipt of the notice." *Id.* "[I]mpos[ing] an actual notice requirement . . . [where] the agency has taken all reasonable steps to send proper notice . . . but the [employee] himself has made inadequate arrangement for receipt," the court said, would allow employees to evade the statute of limitations "simply [by] fail[ing] to acknowledge receipt of a registered letter at the address provided to the agency." *Id.* The court deemed this result "unworkable" and construed the regulation to avoid it. *Id.*

Although the Peace Corps does not press this point—and, indeed, does not even cite *Bell*—one portion of the *Rao* court's analysis arguably undercuts the D.C. Circuit's earlier holding in *Bell*. According to *Rao*, *Bell* must be understood against the backdrop that "the 30-day [now 90-day] statutory limit for filing a civil suit brooked no exceptions." 898 F.2d at 194. "As a result," *Rao* explained, "the [*Bell*] court felt it was necessary to accommodate the 30-day [now 90-day] requirement to the broad remedial purpose of [Title VII] by insisting that the

applicant be given a full 30 days [now 90 days] in which to initiate a civil action after he became aware of the agency's final denial of relief." *Id.* at 194–95. That rationale did not apply, however, to the regulations at issue in *Rao*, which were "expressly subject to equitable tolling." *Id*. at 195. And, as the *Rao* court further explained, "[h]ad equitable tolling been explicitly available in *Bell*, the court might not have felt compelled to interpret the statutory 'receipt' requirement as calling for actual receipt in all cases to protect Title VII complainants." *Id.*

The major premise of that hypothetical, of course, has now come to pass. As noted above, *Irwin* held that equitable tolling is available under § 2000e-16(c), *see* 498 U.S. at 93–96, and the governing EEOC regulations now embody that rule, *see* 29 C.F.R. § 1614.604(c). The notion that the *Bell* court "might" have reached a different result with this predicate, however, does not provide sufficient basis for this Court to disregard otherwise binding circuit precedent. Rather, "[i]f a precedent of" an appellate court "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," the lower court "should follow the case which directly controls, leaving to [the appellate court] the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (holding that the Court of Appeals erred in declining to apply Supreme Court precedent, even though the reasoning of that precedent had been eroded by subsequent decisions); *see also United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges, like panels of this court, are obligated to follow controlling circuit precedent until either we, sitting en banc, or the Supreme Court, overrule it."). Given the concerns raised in *Rao*, district courts should exercise "great caution in extending *Bell*'s no constructive notice reasoning" beyond the facts of *Bell* itself. *Rao*, 898 F.2d at 197. But, in the absence of contrary D.C. Circuit or Supreme Court precedent, the core holding of *Bell* remains binding.

In light of *Bell*, *Irwin*, and *Rao*, the meaning of "receipt of notice" in § 2000e-16(c) in this Circuit appears to be as follows: By default, the 90-day window to sue runs from the employee's "actual notice" of the final administrative action (*i.e.*, *Bell* controls). But, if the decision is first delivered to the office of the employee's attorney, the window instead runs from the date of that delivery (*i.e.*, *Irwin* controls). And, assuming that the D.C. Circuit would extend *Rao*'s reasoning to § 2000e-16(c), there is an additional exception (not considered in *Bell*) if the employee's lack of timely notice is the employee's own fault, in which case the window runs from the date notice would have been achieved had the employee made adequate arrangements to receive it. *Cf. Maggio v. Wis. Ave. Psychiatric Ctr., Inc.*, 795 F.3d 57, 59 n.1 (D.C. Cir. 2015) (observing that, in the analogous context of the deadline to file private-sector Title VII suits, 42 U.S.C. § 2000e-(f)(1), other circuits have held "when plaintiffs fail to receive notice through their own fault, the 'actual-notice' rule does not apply").

The Peace Corps is not entitled to summary judgment under any of these criteria. To start, the Peace Corps has not attempted to bring this case within *Irwin*'s ambit. The Peace Corps never argues that McGary was represented by counsel when the EEOC issued its final decision, let alone argue that the decision arrived at his counsel's office before May 8, 2013.

Similarly, the Peace Corps has failed to show that it is entitled to summary judgment under *Rao*'s employee-fault exception to *Bell* (assuming the D.C. Circuit would recognize the same exception for § 2000e-16(c) as it did for the EEOC regulations it construed in *Rao*). Although the Peace Corps asserts that McGary's Virginia address was his "last known address officially on file with the EEOC," Dkt. 42 at 8, 9; Dkt. 47 at 9, it fails to support that assertion with any citation to the record. And the only evidence before the Court cuts the other way: McGary has shown that the EEOC sent multiple items of correspondence to his address in Japan

*before* it rendered its final decision, *see* Dkt. 43 at 25–27, and that the EEOC sent at least one of its earlier decisions to that address, *see* Dkt. 13 at 51. On this record, a reasonable factfinder could conclude that McGary was not at fault for his initial nonreceipt of notice.

That leaves *Bell*'s "actual notice" standard. But no evidence suggests that McGary received actual notice of the EEOC's final decision prior to May 8, 2013. And, as both the Court and McGary have previously explained, a reasonable factfinder could conclude that the EEOC's final decision (which was mailed to McGary's Virginia address on April 26, 2013) would have taken 12 or more days to reach McGary in Japan. *See McGary I*, 156 F. Supp. 3d at 34; Dkt. 43 at 2. The Peace Corps has offered no evidence that the EEOC's final decision was actually mailed on the date it was signed. *See infra* p. 4. But, even assuming it was, it is not difficult to construct a chain of events that would have delayed McGary's receipt of the required notice until at least May 8. If, for example, the decision took 3 days to reach McGary's Virginia residence, 4 days to be picked up and forwarded to McGary by McGary's (seriously ill) wife, and 5 days to reach Yokosuka, then the notice would have appeared in McGary's mailbox on May 8 at the earliest. The Court cannot foreclose such a possibility on the present record. Summary judgment is therefore unwarranted.

The Peace Corps makes three arguments to the contrary, none of which is persuasive.

First, the Peace Corps argues that "[t]here is a presumption that [McGary] received the [EEOC's final] decision within five calendar days after the April 26, 2013, mailing." Dkt. 42 at 6. This argument is confused. Although courts often presume that postal mail reaches the destination *to which it is addressed* in three-to-five business days, *see, e.g.*, Fed. R. Civ. P. 6(d); *Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 299 (D.D.C. 2013), nothing in that rule warrants the presumption that the EEOC's final decision arrived *in Japan* three-to-five days after the EEOC

mailed it *to Virginia*. Indeed, that presumption would be nonsensical. *See McGary I*, 156 F. Supp. 3d at 34. Here, taking the evidence in the light most favorable to McGary, a reasonable factfinder could conclude that the EEOC sent notice of its final decision to Virginia and not Japan. So, although the Court will presume that the EEOC's decision arrived at McGary's Virginia residence between April 29 and May 1, that says nothing about when the decision subsequently arrived in Japan. As explained, the record does not foreclose the conclusion that the latter event occurred on May 8, 2013, or later.

Second, the Peace Corps asserts that, under *Rao*, McGary "was put on constructive notice . . . when his spouse checked his mail at [his Virginia] address." Dkt. 42 at 7. That is not what *Rao* says. For one, *Rao* did not construe any statutory deadline at all, as the Court has already explained. *See Rao*, 898 F.2d at 193, 197; *see also infra* p. 8. The Peace Corps is therefore wrong to assert that "*Rao* is . . . similar to the case at bar in that it involved a statutory time limit for the filing of an appeal." Dkt. 47 at 10. Moreover, and more importantly, *Rao* expressly reserved on the question "whether receipted notice by Rao's friend [at Rao's unoccupied residence of record] would be sufficient in and of itself to constitute constructive notice to Rao." 898 F.2d at 197. Although this Court could in principle resolve that open question now, it will not do so absent argument from the parties. Rather than advocate its desired result, the Peace Corps merely asserts—incorrectly—that the result is mandated by precedent. *See* Dkt. 42 at 7. That effort is unavailing.

Finally, the Peace Corps asserts that "[t]he burden of proving timely filing falls exclusively on the plaintiff," such that ambiguity in the record as to when McGary received the notice justifies the entry of summary judgment in favor of the Peace Corps. Dkt. 42 at 7–8. That is not the law. The D.C. Circuit has clearly and repeatedly held that the defendant bears the

burden of proof on this issue. *See, e.g.*, *Colbert*, 471 F.3d at 165; *Bowden*, 106 F.3d at 437. Although the Peace Corps cites the rule that the plaintiff bears the burden of proving facts sufficient to justify the *equitable tolling* of the deadline, *see* Dkt. 42 at 7–8 (citing *Smith v. Holder*, 806 F. Supp. 2d 59, 63 (D.D.C. 2011), and *Smith v. Dalton*, 971 F. Supp. 1, 3 (D.D.C. 1997)), that is a separate issue that arises only *after* the defendant meets its burden of showing that the complaint was not filed within "90 days of receipt of notice of [the EEOC's] final action," 42 U.S.C. § 2000e-16(c); *see, e.g.*, *Colbert*, 471 F.3d at 165, 167; *Bowden*, 106 F.3d at 437.

Thus, because the Peace Corps has failed to demonstrate the absence of any genuine issue of fact as to whether McGary was in "receipt of notice" prior to May 8, 2013, it is not entitled to summary judgment on its statute of limitations defense.

**B. Equitable Tolling**

In the alternative, the Court holds that summary judgment is inappropriate given the possibility of equitable tolling. Even assuming for the sake of argument that McGary's complaint was untimely, McGary can "avoid summary judgment . . . [by] show[ing] the existence of evidence sufficient to permit a reasonable conclusion that the statute of limitations should have been equitably tolled." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998). Equitable tolling is not a "right . . . without limit," but rather requires a showing that the plaintiff "diligently" pursued his rights and "that some extraordinary circumstance stood in [his] way and prevented the timely filing." *Dyson v. District of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013) (internal quotation mark omitted) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Smith-Haynie*, 155 F.3d at 579–80 ("'The court's equitable power to toll the [90-day period] will be exercised only in extraordinary and carefully circumscribed instances.'") (citation omitted). Evidence that a plaintiff received "inaccurate or

ineffective notice from a government agency required to provide notice of the limitations period," however, can justify equitable tolling. *Bowden*, 106 F.3d at 438. As explained above, McGary has adduced evidence that the EEOC deviated from its prior practice of mailing notices to his address in Japan, and instead sent the notice only to Virginia. In other words, he has adduced evidence that the delay between the delivery of the notice to Virginia and McGary's receipt of it in Japan is attributable not to McGary's negligence but to the EEOC's own mistake. This evidence "permit[s] a reasonable conclusion" that equitable tolling is warranted. *See Smith-Haynie*, 155 F.3d at 579.

The Peace Corps cites the rule that, "when a complainant fails to receive a right-to-sue notice because he gave the EEOC an incorrect address or because he neglected to inform the EEOC when he moved, the complainant is at fault and he is not entitled to equitable tolling." *Maggio*, 795 F.3d at 60; *see* Dkt. 42 at 8. Although true, that rule is inapposite here. There is no evidence that McGary gave the EEOC the incorrect address or neglected to inform it of his move. To the contrary, the only available evidence shows that the EEOC was not only aware that McGary resided in Japan, but that it was in the practice of sending correspondence to his address in Japan. The record thus permits the reasonable conclusion that McGary was not at fault.

The Peace Corps also asserts that, "[e]ven if the EEOC was aware of [McGary's] whereabouts at the time they mailed their final agency notice to [his] [Virginia] address, the EEOC satisfied its procedural obligations by mailing the final notice to [McGary's] address of record, which was the [Virginia] address." Dkt. 42 at 9. It is hard to know what the Peace Corps means by this. The Peace Corps fails to identify whatever obligations it may have in mind, and it cites no EEOC rule addressing how the agency should proceed when it is aware of more than one

address for a complainant. There is no record evidence, moreover, that the Virginia address was McGary's only—or even principal—"address of record." Quite the opposite, the certificate of service on the EEOC's August 2012 decision lists both McGary's Japanese and U.S. addresses, *see* Dkt. 13 at 51; McGary attests that he mailed his "Request for Reconsideration" from his address in Japan, *see* Dkt. 46 at 26 (McGary Aff.); and McGary has produced correspondence from the EEOC that was sent in August and November 2012 *exclusively* to his address in Japan, *see* Dkt. 43 at 25–27. The Peace Corps offers no contrary evidence.

Finally, the Peace Corps contends that McGary has failed to demonstrate a factual basis for equitable tolling because he does not allege such a basis in his complaint. Dkt. 42 at 10. It goes without saying, however, that McGary was under no obligation to include in his complaint a response to the Peace Corps's affirmative defense. *See, e.g.*, *de Csepel v. Republic of Hungary*, 714 F.3d 591, 607–08 (D.C. Cir. 2013); *Flying Food Grp., Inc. v. NLRB*, 471 F.3d 178, 183 (D.C. Cir. 2006) ("[A] plaintiff is not required to negate an affirmative defense in his complaint . . . .") (citation and internal quotation marks omitted). In resolving the Peace Corps's motion for summary judgment, the Court must consider the basis for equitable tolling that McGary posits and supports in his opposition brief—namely, that "the EEOC mailed the [final] decision . . . to the incorrect address." Dkt. 43 at 3. Because McGary's argument is supported by substantial record evidence, the Court must deny the Peace Corps's motion for summary judgment.

## CONCLUSION

Defendants' motion for summary judgment, Dkt. 42, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: July 20, 2017